UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE ANNETTE ROOT,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:22-cv-00119-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1975, applied on November 19, 2019 for DIB and SSI, alleging disability beginning July 18, 2018. Administrative Transcript ("AT") 15, 24. Plaintiff alleged she was unable to work due to back pain, urinary incontinence, left knee pain, vertigo, depression,

anxiety, and PTSD. AT 21, 332. In a decision dated February 11, 2021, the ALJ determined that plaintiff was not disabled.[1] AT 15-26. Prior to issuing her findings, the ALJ set forth the legal context as follows:

> The claimant previously filed concurrent applications for Title II and Title XVI benefits that were denied in a decision issued by administrative law judge (ALJ) Daniel Myers on July 17, 2018. The decision was upheld by the Appeals Council on September 26, 2019. As such, a presumption of continuing non-disability arises with respect to the unadjudicated period at issue in the current claim. See Acquiescence Ruling 97-4(9). This presumption is rebutted by evidence showing changed circumstances. There is new and material evidence in the record documenting the presence of multiple medically determinable impairments that were not previously considered, as addressed below. As a result, the previous Findings have not been adopted because a new analysis of the evidence is

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

warranted.

AT 15 (record citations omitted).

The ALJ next made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has established a 'change in circumstances' and has submitted new and material evidence, which successfully rebuts Chavez, Social Security Acquiescence Ruling 97-4(9).[2]
>
> 2. The claimant last met the insured status requirements of the Social Security Act on June 30, 2019.
>
> 3. The claimant has not engaged in substantial gainful activity since July 18, 2018, the alleged onset date.
>
> 4. The claimant has the following severe impairments: lumbar degenerative disc disease, PTSD, depressive disorder, benign positional vertigo, and obesity.
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except that she cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, and crouch. She cannot work at heights or around dangerous machinery. She can understand, remember and apply simple job instructions. She can occasionally interact with coworkers, supervisors, and the public. She can maintain concentration, persistence and pace for simple job tasks. She can occasionally deal with changes in routine work setting. She requires a 5-minute break at the workstation every hour.
>
> 7. The claimant is unable to perform any past relevant work.
>
> 8. The claimant was born [in] 1975 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

---

[2] Pursuant to the Ninth Circuit's holding in Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), the agency issued Acquiescence Ruling (AR) 97-4(9) to apply to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the claimant is not disabled. AR 97-4(9) states that, in such cases, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption, by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period. If a claimant rebuts the presumption, adjudicators must then give effect to certain findings on the prior claim, unless there is new and material evidence relating to such a finding, or there has been a change in the law, regulations, or rulings affecting that finding.

      9.  The claimant has a limited education.

      10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

      11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[3]

      12.  The claimant has not been under a disability, as defined in the Social Security Act, from July 18, 2018, through the date of this decision.

AT 18-25.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following error in finding plaintiff not disabled: The ALJ failed to provide legally sufficient reasons for discounting plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

---

[3] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could form occupations such as furniture cleaner, night cleaner, and laundry worker. AT 25.

Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff argues that the ALJ did not provide legally sufficient reasons for discounting her credibility. The ALJ summarized plaintiff's subjective symptom testimony as follows:

> The claimant alleged disability due to low back and upper back pain, urinary incontinence, left knee pain, depression, anxiety, PTSD, and vertigo. . . .
>
> The claimant testified at the hearing that her back pain and vertigo have worsened since the prior [July 17, 2018] decision and she is now in physical therapy for both her back and vertigo. She takes Meclizine for vertigo but she is not on any pain medication for her back. She has pain around the beltline, which shoots up at times to the neck. She has problems sitting, standing or walking for long and can only lift about 4-5 pounds. She must lie down during the day because of her back. She will get vertigo when she changes from a seated position to a standing position; she uses a cane to push herself up to a standing position. She does become wobbly when she walks and has lost her balance and fallen. She also gets vertigo when she coughs or sneezes and providers will be getting an EKG to test her heart. The dizziness only lasts a short time but she remains unsteady; she essentially stays home because it is embarrassing. If she turns too fast, she will become dizzy as well and she does not drive. She does not like to be around people due to her depression and her short-term memory is affected. She cannot focus for long and she becomes frustrated and cries during the day. Her sleep is affected by back pain and she has bad days where she does not want to do anything due to depression and pain.

AT 21; see AT 55-71 (hearing testimony). The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

AT 21.

As to mental limitations, the ALJ noted that, in the prior agency decision, the ALJ found plaintiff limited to "performing routine, repetitive tasks, and . . . exercising only simple work-related judgments and decisions," among other mental limitations. AT 21. In the new decision at issue, the ALJ cited evidence that plaintiff's mental symptoms were controlled with treatment, as well as limited objective findings, to conclude that there was no "material change" warranting a new mental RFC. AT 21-22. Plaintiff does not appear to take issue with this finding, but rather, focuses on the physical RFC.

Assessing plaintiff's credibility as to physical symptoms, the ALJ wrote that

> <u>routine treatment modalities consisting of medications with few changes and the limited examination findings</u> persuade the undersigned that the claimant's allegations of daily severe symptoms and significant limitations are inconsistent with the medical evidence of record. . . . While there were a couple of occasions of increased abnormal clinical findings, the record does not reveal any significant signs or marked limitations that persisted throughout the relevant period. The preponderance of evidence shows that while she experiences some pain, dizziness, anxiety, and irritability, her symptoms are controlled such that she could nonetheless perform a range of simple, medium exertion work. Thus, the claimant's allegations are not entirely supported.

AT 23-24 (emphasis added). Plaintiff asserts that the underlined passage is legally insufficient to discount plaintiff's credibility, and also that the ALJ's analysis "is not specific enough to support discrediting plaintiff." ECF No. 15 at 9-10.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020). This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

Here, the ALJ found objective medical evidence of impairment, including severe physical impairments of lumbar degenerative disc disease, benign positional vertigo, and obesity. AT 18. The ALJ credited plaintiff's symptom testimony to some extent, finding her allegations "partially supported by her attempts in seeking treatment and medication for her conditions." AT 23.

However, the ALJ found that plaintiff's allegations of disabling back pain and vertigo were undercut by "routine treatment."[4] An ALJ may discount subjective symptom testimony "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints[.]" Social Security Ruling (SSR) 16-3p; see also Harrell

---

[4] As to plaintiff's severe impairment of obesity, the ALJ found that "she has not required any treatment for this condition other than generic advice about diet." AT 22.

7

v. Colvin, 2015 WL 65558, at *11 (E.D. Cal. Jan. 5, 2015) ("[T]he treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding."), citing Parra v. Astrue, 481 F.3d 742, 751 (9th Cir.2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). At the January 2021 hearing, plaintiff testified that she was not taking any medication for back pain. AT 21, 71. The ALJ noted that plaintiff was initially prescribed medication for back pain, but x-rays of her spine revealed normal or mild findings, and a January 2019 medical note indicates that she had no need of prescription medication for chronic back pain. AT 22, 664.

The ALJ also found that plaintiff's complaints of disabling vertigo were inconsistent with her examinations, which revealed "no unsteadiness or gait disturbance. . . . In fact, she frequently denied dizziness." AT 22, citing AT 647 (January 2020 exam note lists dizziness and gait disturbance as negative), 660 (January 2019 exam notes lists dizziness as negative), 669 (December 2019 exam note lists dizziness as negative). The ALJ further found that "[p]hysical therapy was prescribed but she refused." AT 22, citing AT 646 (January 2020 medical note that plaintiff "refused to go" to physical therapy for vertigo). See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (finding that the ALJ permissibly "inferred that Tommasetti's pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative . . . treatment program").

Plaintiff argues that the ALJ was required to ask why plaintiff did not seek further treatment for her back pain and vertigo before discounting her testimony. See Eitner v. Saul, 835 Fed. App'x 932, 933 (9th Cir. 2021) (finding the ALJ "failed to consider possible reasons why claimant did not seek or obtain treatment, including the possible lack of effective treatment for fibromyalgia" before discounting fibromyalgia symptom testimony), citing SSR 16-3p ("We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). In this case, however, the reasons plaintiff did not seek additional treatment were arguably evident from the record. Plaintiff's own doctor noted that she did not need prescription medication for back pain, given her mild clinical findings, and plaintiff apparently

8

rejected a doctor's recommendation of physical therapy for vertigo, saying she "did not want to go to PT just for eye exercises." AT 646, 664. The undersigned finds no error on this basis.

As the ALJ used the proper process and provided proper reasons in her credibility analysis, the court defers to the ALJ's discretion on this issue.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  September 1, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/root119.bothdibssi.ckd